# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ARMSTRONG FLOORING, INC., *et al.*,[1]<br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 22-10426 (MFW)<br><br>(Jointly Administered) |
| Armstrong Flooring, Inc.,<br><div align="right">Plaintiff,</div>vs.<br><br>ReliaQuest, LLC,<br><div align="right">Defendant.</div> | Adv. No. **Refer to Summons** |

### COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

Armstrong Flooring, Inc. ("AFI" or "Plaintiff"), one of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against ReliaQuest, LLC (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

### NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property of the Debtors that occurred during the ninety (90) day period prior to the commencement of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Armstrong Flooring, Inc. (3305); AFI Licensing LLC (3265); Armstrong Flooring Latin America, Inc. (2943); and Armstrong Flooring Canada Ltd. (N/A). The address of the Debtors' corporate headquarters is PO Box 10068, 1770 Hempstead Road, Lancaster, PA 17065.

bankruptcy proceedings of the Debtors pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2.      In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). The underlying chapter 11 bankruptcy cases are captioned *In re: Armstrong Flooring, Inc., et al.,* Case No. 22-10426 (MFW).

4.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter final orders for matters contained herein.

5.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

6.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On May 8, 2022 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

9. On May 11, 2022, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [D.I. 88].[2]

10. On May 18, 2022, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors. [D.I. 175]. No trustee or examiner has been appointed.

11. On June 8, 2022, the Court entered an order authorizing the Debtors to employ and retain Riveron Management Services, LLC ("RMS") to provide interim management services to the Debtors, and to designate Dalton Edgecomb as Chief Transformation Officer of the Debtors (the "CTO"). [D.I. 317].

## THE PARTIES

12. As more fully discussed in the *Declaration of Michael S. Vermette in Support of Chapter 11 Petitions and First-Day Papers* (the "First Day Declaration"),[3] the Debtors were a leading global producer of resilient flooring products for use primarily in the construction and renovation of commercial, residential, and institutional buildings. The Debtors sold their products in North American commercial and residential markets as well as in commercial markets in the

---

[2] All docket items referenced are from Case No. 22-10426, under which the Debtors' bankruptcy cases are jointly administered.

[3] D.I. 16.

3

Pacific Rim. The majority of the Debtors' sales were in North America, where the Debtors were the largest producer of resilient flooring products.

13. Pursuant to Bankruptcy Code sections 547, 548, 550, 704(a), 1106, and 1107, Plaintiff is authorized and has standing to investigate, pursue, commence, prosecute, compromise, settle, or otherwise resolve certain causes of action under chapter 5 of the Bankruptcy Code, including the instant avoidance action.

14. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided security services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 777 S. Harbour Island Boulevard, Suite 500, Tampa, Florida 33602. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of the State of Florida.

## FACTUAL BACKGROUND

15. Prior to the Petition Date, the Debtors, as producers of resilient flooring products, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services. The Debtors also regularly paid for services used to facilitate its business.

16. The Debtors' financial difficulties that led to the decision to file the voluntary petitions are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in the First Day Declaration and are incorporated herein by reference.

17. The Debtors sold substantially all of their assets and businesses during the Chapter 11 Cases, but did not realize sufficient proceeds from such sales to satisfy general unsecured claims in full.

18. As of the Petition Date, the Debtors utilized two separate cash management systems (each, a "Cash Management System"), one for the Canadian Debtor and the other for the U.S. Debtors, for the collection, concentration, management, and disbursement of funds in the Debtors' business.[4] As of the Petition Date, the Cash Management Systems consisted of approximately 17 bank accounts (the "Bank Accounts") maintained at JPMorgan Chase Bank, N.A. ("JPMorgan").

19. Among these Bank Accounts, disbursements to AFI's vendors were made from the following accounts: accounts ending 6197, 0703, and 7197 held by AFI at JPMorgan (collectively, the "Disbursement Accounts"). [*See* D.I. 11].

20. AFI drew upon the Disbursement Accounts to pay for its operational costs, including payment to its vendors, suppliers, distributors, and other creditors, including Defendant.

21. During the ninety (90) days before the Petition Date, that is between February 7, 2022, and May 8, 2022 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

22. Upon information and belief, during the course of their relationship, AFI and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to AFI as described in the "Parties" section of this

---

[4] *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms; (II) Modifying Certain Requirements of 11 U.S.C. Section 345(B); And (III) Authorizing Continuance of Intercompany Transactions and Honoring Certain Related Prepetition Obligations*, incorporated here by reference (the "Cash Management Motion") [D.I. 11].

Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. AFI made transfer(s) of an interest of AFI's property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $100,700.00 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

24. Plaintiff is seeking to avoid all of the transfers of an interest of AFI's property made by AFI to Defendant within the Preference Period.

25. On or about November 1, 2022, Plaintiff, through counsel, sent a demand letter (the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the Bankruptcy Code, and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.

26. Plaintiff also performed Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has $0.00 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the books and records. As the dates for new value are often based on the

shipping dates for goods and the actual dates of service for services, this new value is subject to adjustment. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value.

27.     Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

28.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "<u>Amendments</u>"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

29.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

30. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, AFI made Transfers to or for the benefit of Defendant in an aggregate amount not less than $100,700.00.

31. Each Transfer was made from one or more of the Disbursement Accounts described *supra*, and constituted transfers of an interest in property of AFI.

32. Defendant was a creditor of AFI at the time of each Transfer by virtue of supplying the goods and/or services identified in this Complaint and in the Agreements to AFI, as more fully set forth on Exhibit A hereto, for which AFI was obligated to pay following delivery in accordance with the Agreements. *See* Exhibit A.

33. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by AFI to Defendant.

34. Each Transfer was made for, or on account of, an antecedent debt or debts owed by AFI to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by AFI as set forth on Exhibit A hereto.

35. Each Transfer was made while AFI was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

36. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

37. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) AFI's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the

Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' and AFI's liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

38. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39. Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

40. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was incurred by another Debtor but paid for by AFI without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C. The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

41. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

### COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

44. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

### COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

47. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

49. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 30, 2023

          **CHIPMAN BROWN CICERO & COLE, LLP**

          */s/ Robert A. Weber*
          Robert A. Weber (No. 4013)
          Mark L. Desgrosseilliers (No. 4083)
          Mark D. Olivere (No. 4291)
          Hercules Plaza
          1313 North Market Street, Suite 5400
          Wilmington, Delaware 19801
          Telephone:   (302) 295-0191
          Email:        Weber@chipmanbrown.com
                         Desgross@chipmanbrown.com
                         Olivere@chipmanbrown.com

*-and-*

**ASK LLP**

By:  */s/ Joseph L. Steinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara Casteel, Esq., MN SBN 0389115
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3846
Fax: (651) 406-9676
Email: kcasteel@askllp.com

*-and-*

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Fl.
New York, NY  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff*